Good afternoon Illinois Appellate Court First District Court is now in session the Sixth Division the Honorable Justice Mary Elmick for presiding case number 21-1119 William P. Dalessandro versus Judith Quinn Dalessandro. Thank you Darren. Good afternoon gentlemen. We are going to proceed this afternoon you will each have 20 minutes before you start we start counting time we're going to ask you each to introduce yourselves and whoever is representing the appellant please let us know if you'd like to reserve any of your 20 minutes for rebuttal. So beginning with the appellant's counsel please just tell us your name and who you represent. Kevin Lyons representing the plaintiffs and I would like 15 15 minutes for the argument by for rebuttal your honor. Counsel. Good afternoon your honors this is Christopher Gallinari on behalf of the Appellee Chiwak and Texan. Okay Mr. Lyons whenever you're ready you may proceed. Yes thank you. May it please the court. Counselor I'm Kevin Lyons here with me today is attorney Stephanie Kopalski and we represent the plaintiffs who are the Dalessandro heirs at times during this argument I may be referring to the Dalessandro heirs as plaintiffs but the fact that they're the heirs of the decedent should not be lost upon this court. The Dalessandro heirs are appealing the dismissal with prejudice order that was entered by the trial court in favor of the defendant law firm Chiwak and Texan under 2619A5 as being time bar as a result the standard of review is de novo. To the extent that this court desires to apply an abuse of discretion standard on the portion of the argument that relates only to the fraudulent concealment tolling the attorney statute opposed the Dalessandro heirs argued that the trial court ruling was not only arbitrary but unreasonable and the key question that this court should be which I'm going to stop you for one second so what you're saying is on the issue of whether the court the trial court should consider those fraudulent concealment arguments that's where you're saying there was an abuse of discretion that the court should have considered them and then I think you will argue also found the meritorious that that is correct your honor though I do point out that in our response brief to the motion to dismiss that was filed on page eight we actually argued before the court Chiwak purposely withheld information relating to the various trust documents and this information in an attempt to conceal its participation in Quinn's scheme and conspiracy so I believe the de novo standard still applies however counsel has raised the abuse of discretion standard as possibly applying to the fraudulent concealment tolling the statute of repose all right I still contest I still I still believe it should be de novo I would say on the merits of de novo on whether the court should have considered it or you forfeited it it's perhaps abuse of discretion okay and just to clarify counsel just based on what you just said and that was my understanding as well but the 2012 trust agreement was the only one that was originally tendered is that correct that is correct and then the others were tendered apart after this after they responded to the subpoena is that correct that is correct okay thank you and and the key question of course is why did Chiwak wait until the two-year statute of repose to actually respond to the subpoena and produce the 2010 and the 2011 trust if the statute of limitations was six months and it had run under the probate act and if Chiwak thought that they were in the clear then they should have produced the 2010 and the 2011 trust at that at that point in time because the heirs had asked for it if Chiwak was protecting Judy as they claim then why not produce the subpoena response after Judy was already sued within the statute of limitations well you didn't you didn't issue the subpoena until 5 10 18 which was after the statute of limitations had already run correct that is correct justice the the subpoena issued to Chiwak was in may of 2018 so you say that Chiwak had some obligation to make a disclosure to you prior to the time you the decedent and his intent and the D'Alessandro heirs were the third-party beneficiaries of the services being provided by Chiwak and Texan to the decedent of course in hindsight we now know from the 2010 and 2011 trust that the that the D'Alessandro heirs were in fact beneficiaries significant beneficiaries in fact and in the 2012 trust they were removed and reduced to let me ask you a question did you have the 2010 and 2011 trust at the time you drafted your first amended complaint no your honor that first uh amended complaint was against uh Judy to uh address additional um allegations and causes of action that the original complaint did not adequately flush out i felt but you did not have the earlier trust documents no i did not have the 2010 or 2011 trust documents until December 24th of 2018 when Chiwak was fine yes when Chiwak produced and what did those documents give you that made it clear to you that you had a claim against Chiwak well several things first of all in 2010 the 2010 trust left the D'Alessandro heirs 20 million dollars then there was a marital trust where the money that was over the 20 million would then be used for the benefit of the wife Judy that money then after Judy's death would go to the plaintiffs the D'Alessandro heirs after she died and how we know that there would have been money left is because there were restrictions in the 2010 trust where Judy could not use the principle of the other trust without having to check with northern trust who was a corporate fiduciary so in the 2010 trust we have a couple of measures here that protect the D'Alessandro heirs not only did they get 20 million dollars up front under a trust for their benefit making them direct beneficiaries but more importantly there's a co-trustee involved who's there to keep an eye on Judy and not only keep an eye but has the final say so any money that Judy wanted to go into on the principle of that subtrust after the decedent passed would be under the watchful eye of northern trust so it got worse and worse for your clients with each reiteration but how does that put them on notice that the law firm has 20 million dollars the 2011 trust that's very important and here's why because the 2010 trust gave 20 million to the family trust the 2011 trust gave 18.25 million the decrease isn't what's significant here what's significant here is that plaintiff Michelle who would have gotten 6.23 six and two-thirds million she went down to 250 000 that's just that's just a few short months after the 2010 trust and go back i'm sorry i'm going to come back to my same question what you unnoticed that the law firm has liability for this because as alleged in the complaint and the allegations are to be taken true as well as the standard of practice and care the law firm did not adequately represent the decedent's interest and the decedent's intent the decedent's intent was thwarted so and they knew that and they certainly should have shown that and how we knew know that now is because in 2010 and 2011 where they would have gotten a benefit they didn't get one in 2012 and for some unknown reason the two boys in 2011 their percentage increase went up they went from six and two-thirds to seven and a half million any law firm that's in the document you have to ask yourself why an 87 year old multi-millionaire who just married a woman who was 30 years his junior would suddenly switch his estate plan for the third time in three and a half years to make an unusual change and then add a no contest provision so in that 2011 we leave in northern trust and there's a no contest provision which presumably is there because michelle went from six and two-thirds to two hundred and fifty thousand dollars so that's how we know and how they knew that that they should have been sued and we're going to get sued and their actions speak louder than words though their words they admitted that they filed the six-month the probate was done solely to start the six-month stash limitations now they're going to argue that that was the benefit for judy but it also benefited them didn't it and after that six-month period we look at their actions as well and and the only reason i'm focusing on their actions is because the complaint i feel is pretty is pretty clean i feel the allegations are well pled and and i could easily rely on that because this is a 2619 but what's imperative and i think important here is to watch what they did they fought tooth and nail on that subpoena they played every game in the book that they could to push this thing out the lions can i interrupt you for i'd like to focus in on the relation back theory um and and um if we then focus on the allegations of the original complaint you know the theory against judy and and i think the theory against the law firm is that um william was incompetent that he was a victim of undue influence and against the law firm the uh the law firm aided and abetted judy and accomplishing what judy wanted to accomplish so what is it if you could you know explain to us why the allegations in the original complaint would have put a reasonable person on notice that it had exposure uh you know but for the you know lack of knowledge about that uh law firm's involvement that it had exposure to liability here uh i think your best case is the portrait case so if you could speak to it in the context of that case sure i believe the portrait case was the eavesdropping case and um that was the situation where the plaintiff was and the case related back um the trial court in this case uh pointed to the original complaint as if the original complaint was what would be controlling or dispositive in a relation back doctrine analysis and it's not but um i think the why not because the three prongs of the relation back are whether the statute of limitation had not expired when the first filed the second and we'll get to this in a bit was that the defendant received notice of the suit within the statute of limitations and new that's the only prong that's at issue so if you could just focus in on that i would i will do that i just want to point out that the third prong is that the cause of action in the amended complaint grew out of arose out of the same transaction and they admitted that and that's important because it gets to the second point in the original complaint if we look at the paragraphs that we set forth in the reply um the original complaint said that the restatement was forged that the decedent didn't execute it that judith brought the decedent to chuhak's office to change his trust document to her advantage but the decedent did not have capacity when the 2012 restatement was executed and the fraud of having the decedent change his trust left judith with virtually all of the trust assets and the actions of judith were done with the intent to defraud the plaintiffs those are paragraphs in the original complaint 26 14 39 and 43 respectively the second amended complaint oh so let me just stop you there the trial judge said that that was not sufficient all that said is you know that's where the uh that the parties met at the law firm um why is that uh determination incorrect because the analysis under the second prong um first we talk about mistake they argue that mistake is a mistake but clearly in zatev and which followed krupski the u.s supreme court that mistake is inadequate knowledge or a lack of knowledge which is exactly what happened in this case we didn't have the knowledge of what they did to the 2010 and 2011 trust and we only got that knowledge after they had produced a response to the subpoena on on the the two-year deadline so that's as to mistake as to the new or should have known portion they they actually they're the allegations of the complaint of the sack actually saving you so you have to take those um allegations as true but more importantly their conduct again shows that they i'm sorry the allegations the original complaint says no the the allegations of the second amended no i'd like you to focus in on the original complaint so the original complaint said that the decedent did not have the capacity well um as to the law firm judith brought the decedent to blank's office to texas law office to change his trust documents to her advantage that's in paragraph 26 so the knowledge isn't required on the on the plaintiff's side on the error side the knowledge is on the defendant's side and what they knew and they should have known and they did know and they should have known on page 25 of our appellate brief um i go into a little analogy where different law firms had drafted the 2011 20 2010 2011 and 2012 trust there'd be different arguments going on to be different facts under these facts we have one firm doing the 10 11 and 12 trusts that make significant changes by the end and actually significant changes each step of the way that slowly leads this man to execute documents that leave his errors with nothing they knew i'm going to try to just very quickly summarize your argument uh i'm sorry justice walker but your argument is that um the william was incompetent he went to the law firm um to sign away to basically disinherit uh at least partially disinherit um the errors and that uh the law firm prepared the documents or was involved in the preparation of the documents and it therefore should have known that but for the lack of knowledge of the plaintiff about the law firm's involvement that it would have been named as a defendant is that the gist of it it's the gist but the focus cannot be on our intent that was in the original complaint the focus is on the defendants and and that's really i think where the trial court erred because what we have here is the focus is on the party to be named which is with which is chuhan okay that's right and and there is they withheld the 2010 and 2011 trusts why did they do that why did they not produce it sooner there and not only that the allegations the complaint actually say that they knew what was going on the decedent lacked capacity the list the decedent there's fraud torturous interference undue influence and lack of capacity and the law firm that's drafting these documents each step of the way they absolutely have an obligation to their client the decedent as well as the delessandro errors so that's that's really the the relation back doctrine is because they the mistake is a lack of knowledge that lack of knowledge is a result of their conduct their conduct being not just the acts that allowed the decedent's will to be replaced but then they didn't produce any of the documents they didn't give the delessandro errors and they didn't have they didn't speak when they had a duty to speak the plaintiff delessandro errors approached them and asked them for a copy of not just the the 2012 trust but everything dating back and they intentionally only gave the 2012 trust why do the law firm have an obligation to the heirs if the law firm is representing um william and william is at least partially disinheriting theirs well the um the attorneys actually owe uh fiduciary duty to also the intended beneficiaries and clearly now as we alleged in the complaint which is to be taken as true but now that we know from the 2010 and 2011 trust the delessandro errors were the intended beneficiaries of dr delessandro's estate that intention was thwarted of course by 2012 so they absolutely in 2016 had a duty to speak because they knew what had happened and mind you in 2012 that that 2012 trust doesn't just give judy everything it removes northern trust as the corporate trustee i'm going to cut you off because i think justice walker has a question and you are technically he's already he was going right into it right there that's what i i want to know was removed in the 2012 amendment so that he can continue on i'm i'm good so so the 2012 trust it did a number of things um one of which was it removed northern trust as a co-trustee which would have at least been a watchful eye it gave everything it gave the entire marital trust to judy it made judy sole trustee she had complete withdrawal rights and what that means is judy as trustee can give everything to judy as beneficiary for no reason she could transfer gift or spend on the fan on the sub trust the credit shelter trust the tax credit shelter trust she gets the income no matter what and on the principle she's the one that gets to make a decision as to whether she needs the money for health education maintenance or support and here's the kicker in their 2012 trust that you are drafted they don't that judy doesn't have to consider her other sources of income and making that determination as trustee for her own benefit but the real sad thing and this is really i think the the icing on the cake and what makes this case personal and why bill's intent was proven not to have been met in 2012 judy got all of the personal property these kids got nothing they didn't judy got the rugs the you are out of time unless justice walker or justice taylor has a question thank you thank you um may i proceed justice thank you very much um my name is christopher gallinari i represent chuhak in texas um a number of things play um council for appellants has repeatedly referred to a two-year deadline but the statute of limitations and repose that that is applicable here is not a two-year deadline but a much shorter deadline than that i think we all understand that very well justice taylor justice taylor asked council for appellants about the borchers case and said that he believed that that group was perhaps um plaintiff's strongest uh plaintiff's case but as we say in our brief in borchers the plaintiff's claim against the vice president of her former corporate employer related back to her initial complaint against the employer quote end unknown persons so at the time of the initial complaint there's an objective manifestation of intent by the plaintiff in that case to hold somebody other than the employer responsible we have we don't have any so there's language in that case about lack of knowledge as to the role that people played in the wrongdoing there's language in that case that says that and that's what and here plaintiffs filed their initial complaint attacking a complete copy of the 2012 trust amendment um with knowledge that shuhak and texan was involved in the estate planning and in the preparation of that document and did not objectively manifest any intent to hold them responsible even though they knew the that the law firm had a role in the preparation of that complaint and and as as the appellate court has said in wallstat a plaintiff has not made a mistake if the allegations reveal that he or she intended to sue one party for misconduct but after the time limitation period has passed decides to add an additional defendant not contemplated in the original complaint who may also have been liable rather 616d applies where plaintiff's allegations and the record show that the new defendant was the party responsible for the claimed misconduct in the original complaint we don't have that um we have mr gallinari i want to i want to ask you a question and i want to you know sort of put it in layperson terms um as i understand the gist of mr lyon's uh argument um um why why is that not sufficient to put an objective person on notice that um you know but for the lack of information about you know the role of the specific role of the firm that they would have been sued uh what why is that not sufficient well i think that here it's important to look at what plaintiffs alleged in their initial complaint versus what they alleged in their first amended complaint and i think what i would i had just what i just said are allegations from the original complaint i think right and to answer that question i think it's important to look at the distinction between what plaintiffs filed in their initial complaint when they were represented by prior attorneys and what they alleged in their first amended complaint after they retained mr lyons in this firm what we see is is a deliberate litigation strategy where the plaintiffs in filing their initial complaints are not adding to their will trust or will contest or trust contest count any claim for undue influence or tortious interference with uh testamentary relationships no claim for money damages against any defendant at all all they are seeking is the equitable relief of setting aside the instruments that they believe are improper and based upon plaintiff's decision to proceed in litigation in that manner with knowledge of chuhak's involvement with respect to that trust which as mr lyons admits is the instrument that he alleges disinherits the plaintiffs and and in even the 2010 and 2011 instruments she did not have so with respect to the 2012 trust restatement there's nothing that would indicate to a a a reasonable attorney that the attorney would have been sued if not for a mistake as to its identity and that's the standard under 616d we don't have that here but but here's what we do have mr uh gillinari is that the it's it's about the role that they played and when did the plaintiffs learn of the role that chuhak played the originally they only had the 2012 restatement but once they received the 2010 and 2011 restatement they now had more information and now they had reason to believe that mr chuhak's role was greater than what they previously thought it was and then that combined with and and this is a question that i have for you mr chuhak filed and opened a probate estate for an estate that had no assets true because the trust is not an asset of the estate so let me start by saying just tell us the reason that your client uh opened the probate estate and then i want you to come back to the question of the role that they're alleging mr chuhak played i think that mr broad has told the probate court the reason they opened the estate was because after the meetings between plaintiff's attorneys and chuhak in texas when in april of 2017 plaintiffs it didn't just they didn't just make a demand on chuhak they had their own lawyers who went to meet with chuhak and in an adversarial meeting because they weren't relying upon chuhak at that meeting they had their own lawyers just to be clear just to be clear just to be clear mr geller the chuhak had already made an offer of four million dollars to the to the uh to the uh the heirs is that correct i to that meeting all that in the record i'm not sure about that your honor i definitely read it that there was an offer of four million dollars i'm not sure about that okay that's fine uh and and if so i don't know at what point that that but to the extent that such an offer was communicated again it was communicated on behalf of their client judith dallasandro under rule 1.6 chuhak and texan can't divulge information to the heirs unless their client judith dallasandro approves them doing this mr lyons has said that prepared estate planning documents for their parents and that they were the intended beneficiary of those estate planning documents now there is case law saying that the duty of care can be enforced by the beneficiaries but there's no case law saying that the entire fiduciary duty is applied to them as well the fiduciary duty applies to the attorney-client relationship it applied to mr dallasandro and then it applied to judith dallasandro after he died chuhak and texan could not have given additional documents after mr dallasandro's death without the approval of their client under rule 1.6 and and i think that even the mariturn partners case that um appellants cite to in their reply brief say defendants knew or should have foreseen that a breach of the requisite duty of care would result in a loss for both mariturn and the outside investors but but um in response to the citation of that case i i would draw the court's attention to i think this is the best case that really summarizes it there's a seventh circuit case called roto r-o-p-p-o 869 fed third 568 from 2017 and and it summarizes the illinois law on this point it was a decision by um justice ripple and at at page 592 it says in illinois an attorney generally owes a duty of care only to his client and not to third parties this general rule is meant to protect the attorney-client relationship since an attorney must represent his client with zeal and undivided loyalty in adversarial matters he cannot have fiduciary duties to third parties which may interfere with this duty to his client and leave him vulnerable to liability a narrow exception your position that the firm could not disclose the earlier drafts of the trust agreements before they had either the spina or agreement of their client yes okay and but even more importantly for purposes of what they should have known about whether or not from that complaint they should have known that they would have been sued there's no precedent that that supports the argument that where you are then later asserting additional claims against one defendant that you then have the ability to relate back those new additional claims to another defendant under 616d what mr lyons is trying to do is he's saying he not only has a claim to set aside the 2012 restatement he has a claim to set aside the 2010 and the 2011 although i don't know that he's actually saying that because he's saying here the the children would have gotten 20 million dollars under the 2010 instrument they alleges that he wants to set those instruments aside but what he's saying here on argument seems to indicate something else um that those 2010 and 2011 documents are not as nefarious as he alleges them to be in his complaint be that as it may there's no appellate support for the proposition that once you add to your will and trust contest claim with respect to the 2012 documents and you try to set aside also the 2011 and 2010 documents that you then can add an additional defendant under under um 616d2 there's there's no support for that all of the cases that find relation back arrive are either cases where the plaintiff manifests an intent in its complaint to hold the defendant that he names or some other unknown people responsible for his injury um my employer and unknown person mr galli Mr. Lyons is arguing that they did do that in their complaint when they mentioned that all of this happened as because in and i'll call her judith because that's what it says here in in the complaint that judith took the scene to uh to the to the office for the purpose of getting these amendments done and i guess if i were a lawyer and i saw that in a complaint i'd be concerned that they're naming me as all of this having happened at my office well you could be there could be an allegation that refers to you as a witness to somebody else's misconduct but there's nothing in the complaint that evinces an intent to hold that witness responsible for the defendant's just interrupt one second there's also an allegation that you know william's signature was forged so can't the reasonable inference be drawn from those allegations that hey you know we as a law firm this is happening under our watch uh we have some aiding and abetting exposure here no because it wasn't alleged there it wasn't claimed there's no claim for aiding and abetting there's no claim from no it wasn't alleged in the original complaint but what is alleged is that um that judith took william to the chuhack office to change his trust documents to her advantage that william lacked capacity on that date that william did not execute the 2012 restatement and that william's signature was forged so based on those allegations i mean isn't there enough here to uh invoke the relation back doctrine no because those allegations demonstrate to chuhack that plaintiffs could not have misunderstood a crucial fact about their identity because they were the law firm where those documents were signed the the standard is that in other words your argument is that your argument is that um these allegations demonstrate that the plaintiffs already knew uh chuhack's involvement and had nothing that came afterwards nothing that they discovered afterwards from the response to the subpoena uh gave them any more information about it i think that's correct and i think that's how the circuit court reasoned it and i think the circuit court was correct because you know um they they relied heavily on and says a prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him as a strong interest in repose but then the appellate court continues repose would be a windfall for a prospective defendant who understood or who should have understood that he escaped suit during the limitations period only because plaintiff misunderstood a crucial fact about his identity and what you were saying justice taylor is that plaintiff did not misunderstand a crucial fact about chuhack's identity it was right there in the complaint the facts about where these alleged acts occurred and the deliberate litigation strategy revealed in the initial complaint not to hold all of the people who may have been involved jointly and severally liable for money damages under various theories in tort as mr lyons did when he filed his first amended complaint against judy but only the equitable relief to set the instrument aside and when you see that and when you see that complaint and it doesn't go beyond that you don't think that you were not sued because of a mistake about your identity you think you weren't sued because that's the litigation strategy that plaintiffs and their counsel at the time decided to pursue and mr gallagher you agree though but but you agree that they did learn new information once uh uh chuhack responded to the subpoena correct you just believe that that information was inconsequential right i think that they no i i i i think that plaintiffs had sufficient information and and chuhack had sufficient information from what plaintiffs alleged in their initial complaint not to believe that they were not sued only because of a mistake that's the standard um based upon what plaintiffs knew at the time of the initial complaint and based upon what they chose to do and what relief they will really now i agree that additional information yeah i do agree that additional information was provided in response to yes but but isn't the standard whether or not based upon the initial complaint chuhack had information to believe that he could have some exposure isn't that the is that the question no i i don't believe so i think you look to the objective manifestation of the complaint not to what additional claims may be may be alleged later in the case for instance in mccarthy the plaintiffs later added claim against paternal organization defendants for supposedly having encouraged plaintiff suspension from the fraternity didn't relate back to their timely claims for defamation against individual fraternity members because it's a different claim and and the same thing is um uh smiley which is also cited to in our brief you're just about out of time and i want you to briefly address fraudulent concealment before you run completely out of time unless okay thank you well there's there's a number of reasons we stayed in our brief fraudulent concealment does not apply to the addition of here it doesn't apply when you don't know the extent of your injury as we uh as we argue in our brief it doesn't apply here because whatever we produced in response to the subpoena in 2018 was outside the period of time by which there was any valid claim that that um but counsel wouldn't it be that there's a period that starts when they sit down and meet with you they continue through to the production of the subpoena where you're concealing everything that happened prior to the initial the the ultimate uh trust documents but not when but not when they have their own separate lawyers and they're meeting with us because under chicago park district versus kenwood it's the prevailing rule that as between persons sustaining a fiduciary or trust or other confidential relationship toward each other that that you have the duty to speak for purposes of a statute of limitations purposes just because there may be a duty of care to not negligently draft the estate planning documents that's separate and apart from whether or not you have an affirmative duty to disclose under a fiduciary relationship when you represent judith and the plaintiffs come to you in an adversarial posture represented by their own attorney you also tell them don't you that the only relevant document is the current trust document you affirmatively tell them that's all that's relevant which is the truth because after that document is executed the previous documents are no longer of any legal import all right any questions from either anyone else on the panel on the project all right um mr lyons rebuttal yes thank you in zlata this appellate court found that a plaintiff's original complaint is no longer dispositive because mistake is a lack of knowledge if a plaintiff doesn't have that knowledge how could a plaintiff ever plead that in a complaint counsel i think you are mixing your two arguments to tell you the truth i think you're mixing up concealment and relation back relation back is based on what notice the defendant is put on by virtue of your initial report and and what else they knew that's not in your complaint is really not relevant i don't think to that doctor and i've not seen a single case that suggests that they because they know that they may have done something wrong the claim relates back um i respectfully disagree um the reasoning the reason yes counsel uh quoted mccarthy if mccarthy was to be construed as inconsistent with krupski this court in zlata would stated that it would have departed from from it zlata filed krupski which is the u.s supreme court case which clarified the relation back doctrine and rejected the focus on what the plaintiff knew or should have known and that mistake includes a lack of knowledge the facts that give rise to the knowledge of of chuhak or that they should have known are the same facts that give rise to the reason why fraudulent concealment holds the statute of repose in this case but those those same facts apply both equally to the relation back doctrine and the fraudulent concealment so i think that that that is is the counsel referenced roppo which is a seventh circuit case um that's that's inapplicable it wasn't in their brief um but i was able to take a quick look at it here and i think that what the court would should really focus on of course is the illinois state supreme court's ruling in dayhart and in dayhart they say that the general we note that generally the attorney client privilege survives the client's death that's normal but a different rule applies however with respect to a will in such a case there's only a temporary privilege where an attorney prepares a will for a client and witnesses the same the privilege only exists during the lifetime of the client the rationale behind this limited exception to the privilege is that a decedent would if one could ask him forego the privilege so that the distribution scheme that he actually intended can be given effect and that's dayhart v dayhart 2013 illinois 114137 and i believe that's at point in terms of what was the duty that shuach would have to give we cited in our replied brief the case of deluna and meredith and shuach had a duty to disclose because they were retained by the decedent to make sure his intent was met in his estate planning and we didn't know about the 2010 and 2011 until well after the six month period and on the on the eve and on the day really of the the statute of repose the delessandro heirs were intended beneficiaries of that estate planning service and thus the service is provided by shuach shuach therefore had a fiduciary duty including a duty to speak just because shuach decided to represent judy after the decedent passed um whether that was uh you know something that is wise or not they ended up doing it that's on them they don't have a waiver of conflicts letter their their engagement was dual representation we absolutely and that should and have so far gotten communications between the decedent and shuach because we had a right to him because we're the heirs so um can i ask you to respond to mr galanari's uh argument um i had asked mr galanari galanari about the allegations that you do have in your original complaint and those again just remind you are that uh judith brought william to chuvac's office to change his trust to her advantage that william lacked capacity that william did not execute the 2012 restatement and that william's signature was forged um that you know i asked him well why wouldn't that have put an objective person in chuhak's position on notice or given knowledge that they had potential exposure here um and his response was that in fact the allegations demonstrate that the plaintiffs uh had a wide knowledge of chuhak's role but as a matter of strategy elected not to sue chuhak and therefore the relation back doctrine does not apply what's your response well i would imagine that if plaintiff's council had the knowledge of the 2010 and 2011 trust their allocations would have included that in their complaint within the six-month period but more importantly what we're talking really about here is policy and public policy if heirs are supposed to sue every estate planning attorney who drafted the last estate planning document then we are going to have a lot of estate planning attorneys getting sued and we're going to have a lot of plaintiff lawyers representing those heirs getting hit with 137s so we have to have a good faith basis in fact and in law when you're going to sue a law firm you better be right so mr galanari's argument actually defeats itself confirms that they had notice we didn't have the 2010 and 2011 trust it was quite frankly we were shocked that they were involved and saw the documents that we saw which is why we filed the action that we did and why even if we get to a fraudulent concealment didn't exist we have equitable tolling and equitable estoppel from an equitable estoppel standpoint they can't stop us from for bringing a suit against them because they decided to not produce the information until the day the statute opposing from an equitable tolling standpoint let's say that both sides did nothing wrong the chuhak had had done nothing wrong here well what we have is chuhak's negligence where they didn't meet the intent of the grant now where does that fall down on who who has to bear that why should the plaintiff have a miscarriage of justice and the whole purpose of the relation back doctrine as this court has found is to get to the merits of the case and that is what should have happened all right counsel thank you both i think you're out of time unless there are other questions from anyone all right thank you both very interesting case and we will take it under advisement and we will hear from us in due course